**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

EDWARD BURGESS,
                                        Plaintiff,

        v.                                                      No. 08-CV-725
                                                                    (GLS/DRH)

LESTER N. WRIGHT, Associate
Commissioner/Chief Medical Officer;
LARRY SEARS, Superintendent; GLENN
CHAMPAGNE, Facility Health Service
Director; DR. CAHILL, Facility Director;
LOUISE TICHENOR, Dr.; and MR. BOYEA,
Inmate Grievance Program Supervisor,

                                        Defendants.
_____

**APPEARANCES:**                                      **OF COUNSEL:**

EDWARD BURGESS
Plaintiff Pro Se
524 Mellon Street
Pittsburgh, Pennsylvania 15206

HON. ANDREW M. CUOMO                          MEGAN M. BROWN, ESQ.
Attorney General for the                              Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Edward Burgess ("Burgess"), formerly an inmate in the custody of the

New York State Department of Correctional Services ("DOCS"), brings this action pursuant

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

to 42 U.S.C. § 1983 alleging that defendants, six DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments.  Am. Compl. (Docket No. 23).  Presently pending is defendants' motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 24.  Burgess opposes the motion.  Docket No. 28.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Burgess as the non-moving party.  See subsection II(A) infra.  At all relevant times, Burgess was incarcerated at Franklin  ("Franklin") and Upstate ("Upstate") Correctional Facilities.  Am. Compl. ¶¶ 2, 8. Burgess asserts claims of multiple violations of his Eighth Amendment right to medical treatment related to (1) a broken finger, (2) an injured right hand, (3) back and neck pain, (4) diabetes, and (5) provision of pain medication.  Burgess also asserts that his Fourteenth Amendment right to due process was violated when defendant Boyea failed to determine a grievance filed by Burgess.[2]

---

[2]DOCS maintains a grievance program for inmate, known as the Inmate Grievance Program (IGP), through which inmates may seek remedies for mistreatment or misconduct by prison staff.  The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the Superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

**A. Left Finger**

On or about March 22, 2006, Burgess injured a finger on his left hand in a work-related accident at Franklin.  Am. Compl. ¶ 2.  He was not concerned about the finger until his hand began to swell.  Id.  Burgess went to the infirmary and had x-rays taken of his left hand.  Id.  Medical staff applied a bandage to his left hand on March 28, 2006.  Docket No. 24 at 15.  The finger was painful, swollen, and deformed.  Docket No. 24 at 50.  There was a fracture in the finger, but it was unclear whether it was an acute or chronic injury.  Id. Another x-ray was recommended to determine the actual damage the finger sustained.  Id.

On April 13, 2006, Burgess was examined by defendant Champagne and his splint was discontinued.  Docket No. 24 at 15.  On April 18, 2006, a comparison x-ray was taken but yielded similarly inconclusive results.  Id. at 51; Am. Compl. ¶ 4.  A CT scan was recommended.  Docket No. 24 at 51; Am. Compl. ¶ 5.  On May 2, 2006, defendant Cahill issued a wrist support and bandage for Burgess.   Docket No. 24 at 15; Am. Compl. ¶ 6.  On June 2, 2006, the CT scan results confirmed a fracture but it was unclear "whether there is [a] fibrous union or whether there is also instability of the fracture during motion."  Docket No. 24 at 20.  No cast was placed on the hand or finger "based on [the] type and extent of fracture involved."  Id. at 15.

On June 29, 2006, Burgess was transferred to Upstate.  Am. Compl. ¶ 8.  On July 2, 2006, defendant Tichenor informed Burgess that his finger had healed but incorrectly.  Id. ¶ 24.[3]  On July 10, 2006, Burgess was evaluated for a wrist brace and reported decreased

---

[3]On July 5, 2006, Burgess filed a grievance at Upstate concerning the medical treatment he had received for his left finger and right hand, requesting immediate treatment.  Docket No. 24 at 97.  On October 5, 2006, the IGRC responded that Burgess had received antibiotic treatment for his right hand, had received a myriad of diagnostic

sensation in both feet, a decreased range of motion in his left hand, and slight swelling in his right hand.  Docket No. 24 at 36.  On July 27, 2006, radiology results indicated degenerative changes in Burgess' left hand and traces of a healed or healing fracture, but no visible fracture lines.  Id. at 52.  The following day, medical examination found swelling over the finger joint on the left hand, without tenderness to palpation but with clicking and limited range of motion.  Id. at 45.  Burgess was advised that the hand would need surgery to remove a bone splinter.  Id. at 19, 43, 48.[4]  Burgess stated that the orthopaedic specialist expressed dismay at defendants' delay in bringing Burgess to the specialist for treatment.  Am. Compl. ¶ 13.  Additionally, Burgess was told that Albany had denied the specialist permission to operate on Burgess' left hand at that time.  Id.  ¶ 15.

─────────────────────

examinations, and had been evaluated by an orthopaedic surgeon.  Docket No. 24 at 98. Burgess' appeal was denied on the grounds that (1) two x-rays, a CT can, a wrap and wrist brace, and orthopaedic consultations were provided for Burgess' left finger; (2) two x-rays, a bone scan, and an orthopaedic consult were provided for Burgess' right hand; and (3) a cast was not medically appropriate for a broken finger.  Docket No. 24 at 99. Burgess' appeal of these findings was denied for the reasons.   Docket No. 24 at 101.

   [4] A possible infection in Burgess' right hand precluded surgical intervention on the left hand until the infection was resolved.  Docket No. 24 at 46, 48.  On June 11, 2006, Burgess was involved in an altercation with another inmate where he sustained a bite wound to his right hand.  Docket No. 24 at 19, 43, 55, 59.  Immediately after, Burgess was treated with two rounds of antibiotics, but his hand continued to swell and cause pain.  Id. at 55, 59. On July 28, 2006, Burgess was evaluated by the medical department which expressed concern that Burgess had a deep abscess or osteomyelitis, a bone infection. Id. at 55, 59; see also THE MERCK MANUAL 459 (17th ed. 1999).  Medical staff recommended that Burgess undergo a three-phase, contrast, bone scan to rule out any infection as well as undergo a month-long antibiotic treatment regimen.  Id. at 55, 59. Physical examination showed swelling but no discharge or decreased range of motion.  Id. at 59.  Additionally, Burgess had no subjective reports of swelling, chills, or fever.  Id.  On July 30, 2006, Burgess was admitted to the infirmary for hydration prior to his bone scan the following day.  Docket No. 24 at 64, 65.  His right hand was swollen, but there was no drainage and he had persistently been on antibiotics.  Id. at 63.  The following day, the scan showed no infection.  Id. at 56, 57, 61-62.  On March 2, 2007, Burgess' right hand had no redness or signs of recurrent infection.  Id. at 27.

On September 19, 2006, Burgess sent a letter complaining about the medical treatment he was receiving. Docket No. 24 at 18, 42.  DOCS Division of Health Services responded that Burgess was being treated often by the medical department, had received two x-rays and a CT to diagnose the fracture in his finger, and treatment for a broken finger consisted of a splint.  Id. at 19, 43, 85.  Burgess was also reminded that potential complications from the suspected infection in his right hand delayed surgery on the left hand.  Id.  Burgess was also reminded that his appointment with an orthopaedic surgeon needed to be rescheduled. Id.

On December 6, 2006, Burgess was informed by an orthopaedic specialist that the physician would only evaluate his right hand and not his left because that was the purpose of the visit.  Docket No. 24 at 53.   Radiographs on December 12, 2006 indicated that Burgess' left finger had healed and the alignment was unchanged.  Id.  On December 22, 2006, Burgess again met with the orthopaedic specialist, and when discussing treatment,

> started immediately to be verbally aggressive with [him].
> Immediately [the physician] told [Burgess] that [he] was there to try to help him but if he is no cooperating, [the physician] cannot help him.  [Burgess] did not let [the physician] examine . . . his hand. [Burgess] left immediately . . . without any desire of offered treatment.

Docket No. 24 at 31; see also Docket No. 24 at 21, 32; Am. Compl. ¶¶ 11, 21.  After Burgess' outburst, the orthopaedic specialist discharged him as a patient, offering to recommence treatment if desired by Burgess.  Docket No. 24 at 31.

On March 2, 2007, Burgess reported to Alice Hyde Medical Center for consultation prior to surgery for a joint debridement on his left hand.  Docket No. 24 at 27-28.  Initial assessments of the injury indicated that the fracture had healed with a mechanical locking

5

which prevented full range of motion for the finger and pain when attempting to move it.  Id. at 27.  Physical examination showed no rotational deformity or signs of infection.  Id. at 28. Radiology results showed a prominent bony spur in the finger.  Id.  The ultimate goal of the surgery was to improve but not fully correct Burgess' range of motion and level of sensation.[5]  Id.  Surgery was scheduled for the summer of 2007.  Id. at 29.[6]  On July 20, 2007, Burgess saw another surgeon as his first orthopaedic specialist could no longer perform the scheduled surgery.  Id. at 49.  Surgery was still necessary and Burgess was explained the risks, benefits, and alternatives to the procedure.  Id.

On August 6, 2007, Burgess underwent surgery on his left finger.  Am. Compl. ¶ 29; see also Docket No. 24 at 104.  The surgical site healed well and left Burgess with good flexion and grip.  Id. at 104.  Further surgery was not recommended as there was potential for increased pain and reduced function.  Id.  Burgess was treated with pain medication for his discomfort.  Id.  Burgess began attending physical therapy in September or October, 2007 to help his left finger regain its full range of motion.  Am. Compl. ¶ 30.

---

[5]The decreased sensation was also due to arthritis, which would not be addressed by surgery.  Docket No. 24 at 27-28.

[6]On June 7, 2007, Burgess filed another grievance regarding the care he received for his left finger and neck.  Docket No. 24 at 89.  The IGRC denied the grievance in light of the pending specialist appointments scheduled for June 22 and July 12 respectively.  Id. at 90.  Burgess appealed, stating that both specialist appointments were cancelled and were not rescheduled. Id.  The appeal was denied given that, since arriving at Upstate, Burgess had multiple medical concerns in many body systems which had all been addressed and managed through screening examinations, diagnostic tests, specialist consultations, surgical interventions, and pain management.  Id. at 91.  Burgess' further appeal was also denied.  Id.

**B. Neck and Back Pain**

Burgess underwent a fusion surgery on his neck in 2002.  Docket No. 24 at 80.   On March 13, 2007, the medical department responded to Burgess' claims that the screws used in the operation were fractured.  Id. at 79; Am. Compl. ¶ 26.  As there was no information in his medical chart as to who performed the surgery, when it was performed, or where it was performed, Burgess was instructed to contact the surgeon.   Id. at 79.  On April 9, 2007, Burgess was prescribed 1000 mg of Tylenol, twice a day, to alleviate his persistent neck pain.  Id. at 74.  On April 30, 2007, Burgess was informed that both neurological and orthopaedic consultations had been approved and were being scheduled.  Id. at 83.

On May 14, 2007, a DOCS supervisor advised Burgess that he had relayed on Burgess' complaints of pain and leaned that there was a prior neck surgery and that Burgess was scheduled to meet with a neurosurgeon concerning the pain in relation to the surgery. Docket No. 24 at 38, 77.  Additionally, the letter informed Burgess that such scheduling was done by CORC and should be forthcoming soon.   Id.  On June 11, 2007, Burgess' appointment with a neurologist was cancelled after he suffered through a seven-hour bus ride without pain or diabetes medication.  Id. at 91.  On August 1, 2007, radiology reports of Burgess' neck showed possible fractures of two screws in Burgess' vertebrae, the surgery was performed by D. DiRisio, and Burgess was scheduled to be transported for an appointment but refused because he had no medicine to take with him and he was afraid to travel for days without it.  Id. at 80.  Burgess requested that the appointment be rescheduled.   Id.  On September 13, 2007, Burgess attended a neurological consult where he was prescribed pain and neurological medication and a neck CT scan, and advised to reschedule with Dr. DiRisio if the medication failed to help.  Id.

7

On January 28, 2008, the CT scan results showed a disruption of a screw and spinal stenosis in three vertebrae.  Docket No. 24 at 81.  Burgess continued to complain of pain despite the multiple prescriptions and was again advised to see Dr. DiRisio.  Id.[7]  On April 10, 2008, Burgess returned for another consultation for his persistent neck pain.  Id. Treatment notes indicate that Burgess was still not responding to the medication and that there were no neurological findings noted.  Id.  Burgess was again instructed to return to Dr. DiRisio to see if screw removal was necessary, or if the pain was unrelated to the screw breakage.  Id.  Additional radiology tests were suggested.  Id.

### C. Diabetes and Pain Medication

On February 13, 2006, Burgess had a swollen foot, for which elevation and rest were recommended.  Docket No. 24 at 34.  The following day, Burgess was given refills for a prescription.  Id.  When Burgess was transferred to Upstate on June 29, 2006, he was prescribed medication for pain.  Am. Compl. ¶ 22.  However, upon arrival at Upstate, he was told that he could no longer take the medication.  Id.  As of July 2006, Burgess was taking another medication for his pain.  Id.  Burgess continued taking the medication for five months without relief.  Id.  On July 10, 2006, Dr. Tichenor informed Burgess that he had already lost most of the sensation in both feet.   Am. Compl. ¶ 10.

On January 1, 2007, Burgess was re-prescribed his former medication.  Am. Compl. ¶

---

[7]On January 28, 2008, Burgess filed a grievance at Clinton against the medical department regarding the lack of treatment and pain medication he received for the broken screws in his neck and finger.  Docket No. 24 at 102.  On February 12, 2008, the IGRC issued a deadlocked decision.  Id. at 108-10.  On March 5, 2008, the Superintendent denied Burgess' grievance.  Id. at 104.  Burgess' appeal was denied by a CORC on April 23, 2008.  Id. at 106.

23.  However, when he returned to Upstate, he was again refused the medication because he was "to[o] old."  Id.[8]  On July 9, 2007, it was noted that Burgess' complaints of leg and foot pains could worsen from complications from his diabetes.  Docket No. 24 at 91.  In response, additional medication for nerve pain was added to his pain relief regimen.  Id.

## D. Grievances

Prior to Burgess' incarceration at Upstate, he filed a grievance concerning events at Franklin.  Am. Compl. ¶ 17.  The grievance was denied and appealed.  Id.  After August 4, 2006, defendant Boyea, the IGP Supervisor, wrote to Burgess regarding a previously filed grievance at Franklin, explaining that a CORC decision had not yet been rendered.  Docket No. 24 at 70; Am. Compl. ¶ 18.  On September 18, 2006, DOCS employee Eagen wrote to Burgess stating that  Burgess' grievance was received by CORC on August 7 and was being processed.  Id. at 24 at 71.  Burgess wrote Eagen again on December 10, 2006, inquiring whether CORC had responded to his appeal yet.  Am. Compl. ¶ 20.  Burgess

---

[8]On February 2, 2007, Burgess filed another grievance at Upstate pertaining to, among other things, the inadequate pain relief.  Docket No. 24 at 92.  On March 9, 2007, the IGRC denied Burgess' grievance.  Id. at 93.  Burgess appealed, specifically citing to the fact that he was prescribed pain medication that Dr. Tichenor refused to give him based on his age when he returned to Upstate.  Id..  The appeal was denied because (1) Burgess was treated by the orthopaedist in December and March, (2) his surgery was pending approval and scheduling, (3) there had been no complaints since February 20, 2007 and prior to that, December 11, 2006, (4) the only complaints of pain in 2007 had been for back pain for which 2000 mg of Tylenol a day were prescribed, and (5) he was treated by an orthopaedist for complaints of pain in his knee.  Id. at 95.  CORC's decision on Burgess' further  appeal upheld the grievance decision but only to the extent that it was initially asserted since Burgess had raised separate issues in his last appeal which required a separate grievance.  Id. at 96.

received a response that CORC had issued is decision on September 27, 2006 and that if

he had not received a copy, he should contact the IGP Supervisor at Franklin.  Id.

## II.  Discussion

In his amended complaint, Burgess claims that defendants violated his Eighth

Amendment rights by being deliberately indifferent to his serious medical needs and his

Fourteenth Amendment rights by failing to send him the September 27, 2006 CORC

decision.  Defendants move for dismissal asserting that Burgess has failed to allege an

Eighth Amendment claim or the personal involvement of defendants Wright or Sears.

Defendants also claim they are entitled to qualified immunity.

## A. Legal Standard[9]

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When

considering a motion to dismiss, "a court must accept the allegations contained in the

complaint as true, and draw all reasonable inferences in favor of the non-movant."

Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint which

consists of conclusory allegations unsupported by factual assertions fails even the liberal

standard of Rule 12(b)(6)."  Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL

2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d

---

[9] Burgess has attached approximately 100 pages of medical records and grievances to the amended complaint.  These documents were considered in deciding the present motion.  See  Falso v. Ablest Staffing Servs., __ F.3d __, 2009 WL 1762206, at *1 (2d Cir. June 23, 2009) ("In deciding a motion to dismiss, a court should consider only those facts alleged in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").

65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it

appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts

which would support his or her claim or entitle him or her to relief.  See Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to "special solicitude," . . . that a pro se litigant's submissions must be
> construed "liberally,". . . and that such submissions must be read to raise the
> strongest arguments that they 'suggest. . . . .  At the same time, our cases
> have also indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . or arguments that
> the submissions themselves do not "suggest, . . ." that we should not "excuse
> frivolous or vexatious filings by pro se litigants" . . . and that pro se status
> "does not exempt a party from compliance with relevant rules of procedural
> and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, __

F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to

count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is

obliged to construe his pleadings liberally.'" (citations omitted)).


### B. Personal Involvement

Defendants contend that Burgess has failed to allege the personal involvement of

Wright and Sears.  "'[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21

F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d

Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a

position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However,

supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
>  (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323-24 (2d Cir. 1986)).

Burgess alleges that Wright, Associate Commissioner of DOCS and Chief Medical

Officer, and Sears, Superintendent of Franklin, were aware of his broken finger and medical

ailments by virtue of their high ranking positions and failed to correct these violations.  See

Am. Compl., First Cause of Action (4) ("Sears . . . [k]new that the finger on my left hand was

. . . broken when they denied my grievance," which confers liability as he "ha[s] sole

responsibility over his employees . . . ."); Fifth Cause of Action ("Wright . . . kn[e]w about

[Burgess'] medical problems . . . [because he] was constantly complaining to medical staff .

. . .").  However, a position in a hierarchical chain of command, without more, is insufficient

to support a showing of personal involvement.  Wright, 21 F.3d at 501.  Burgess has fialed

to allege any facts beyond these two defendants' positions as a basis for knowledge and

liability.

Additionally, receiving a complaint or grievance is insufficient to establish personal involvement.  See Garrido v. Coughlin, 716 F. Supp. 98,  100 (S.D.N.Y.1989) (holding that Commissioner of DOCS not personally liable for ignoring plaintiff's letter of protest and request for an investigation).  Thus, Burgess' contentions do not allege that Wright knew, or was personally involved with the investigation of his grievances.  Rather, Burgess contends that Wright was apprised of these alleged violations due to the IGP and should have known of Burgess' complaints.  This presumed knowledge, without more, is also insufficient to establish personal involvement as there exists no allegation that Wright took any action. See Bodie, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted).  The same reasoning holds true for Sears' alleged involvement that he was aware that a grievance was denied.  Without any allegations that Sears was involved in the investigation into or determination of the grievance process, Burgess cannot establish Sears' personal involvement.  Moreover, there exists no allegation that either defendant created an unconstitutional policy or custom or was grossly negligent in supervising.

Accordingly, defendants' motion on this ground should be granted.


### C.  Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This prohibition extends to the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was

13

sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner

must show that the prison official demonstrated deliberate indifference by having knowledge

of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who

actually knew of a substantial risk to inmate health or safety may be found free from liability

if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at

844.

    "'Because society does not expect that prisoners will have unqualified access to

healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to

state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting

Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a

serious medical condition is determined by factors such as "(1) whether a reasonable doctor

or patient would perceive the medical need in question as 'important and worthy of

comment or treatment,' (2) whether the medical condition significantly affects daily

activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d

158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity

of the denial of care should also be judged within the context of the surrounding facts and

circumstances of the case.  Smith, 316 F.3d at 185.

    Deliberate indifference requires the prisoner "to prove that the prison official knew of and

disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison

officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"Mere disagreement over proper treatment does not create a constitutional claim" as long

as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over

medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim." <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

### 1. Broken Left Finger and Right Hand

Defendants contend that Burgess has failed to demonstrate a serious medical need concerning his broken finger.  "[E]ach of the four New York State district courts in this Circuit have specifically held, as a matter of law, that a broken finger alone does not constitute a serious medical need." <u>Paterson v. Goord</u>, No. 06-CV-211, 2008 WL 623123, at *8 & n.33 (N.D.N.Y. March 4, 2008) (citing cases).  It was thought here that Burgess might also have an infection in his right hand together with the broken finger.  Even taking both ailments in combination, there is still no serious medical need alleged as infections do not generally constitute a serious medical need. <u>See Cox v. Hartshorn</u>, 503 F. Supp. 2d 1078, 1086 (D. Ill. 2007) ("[F]ungal foot rash is not so serious that it is life threatening or poses a risk of needless pain or lingering disability.")(citations omitted); <u>Thomas v. Nassau County Corr. Center</u>, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003) ("[A]n injured hand is not a serious enough condition to satisfy the first prong of the test.") .  Therefore, Burgess has failed to satisfy the objective prong of the Eighth Amendment analysis.

However, even if the combination of a broken finger and potentially infected hand did constitute a serious medical condition, Burgess has still failed to state a claim for deliberate indifference.  The medical record is replete with instances of radiology reports, specialist consultations, provision of pain medication, and prescription of rehabilitative therapies.  Immediately after Burgess was injured, the medical department applied a bandage to his

hand and obtained an x-ray of his hand.  Docket No. 24 at 15.  When the x-rays produced ambiguous results as to whether the fracture was old or new, the medical department ordered two additional confirmatory tests within two months.  Id. at 50-51.  This care and persistence in diagnosing the injury correctly was essential to treating the finger properly and runs in direct opposition to conclusory allegations of delay or indifference.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("[T]he . . . objective is not to impose . . . a model system of . . . care beyond average needs but to provide the minimum level of care required by the Constitution . . . . [T]he essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted).  Thus, defendants' conduct as alleged in the amended complaint does not constitute deliberate indifference to Burgess' medical condition.

Burgess was provided with a splint and two bandages for his finger.  As the medical records indicate, such was the standard procedure for treating broken fingers.  Docket No. 24 at 15.  Casts were not indicated.  Id.  While Burgess contends that he should have received a cast or surgery sooner, these contentions represent, at best, a difference of opinion as to the treatment he should have received.  Such disagreements are insufficient to support a constitutional claim.  Chance, 143 F.3d at 703.  Even if splints and bandages were not an adequate treatment for a broken finger, such treatments would be, at their worst, medical malpractice.  This is still insufficient as negligent actions fail to state a claim for deliberate indifference.  Estelle, 429 U.S. at 105-106 (noting that "an inadvertent failure to provide adequate medical care [is insufficient to sustain a constitutional claim because] . . . negligen[ce] in . . . diagnosing or treating a medical condition does not state a valid claim . . . .").  Similarly, contentions that Burgess should have been taken to the orthopaedist

16

sooner also do not suffice to sustain a constitutional claim.  Sonds, 151 F. Supp. 2d at 312.

Moreover, to the extent that the time it took for surgery to occur could constitute a delay, such claims are also meritless.  The medical record clearly outlines defendants' medically sound trepidation to perform any surgical intervention on Burgess' bone spur until it was confirmed that there was no infection in his right hand.  Additionally, Burgess' own conduct contributed to any delay.  His outburst and refusal to continue with the medical appointment caused the orthopaedist to discontinue treatment.

Accordingly, Burgess has failed to allege facts which would state an actionable claim for deliberate indifference.  Thus, defendants' motion should be granted on this ground.


### 2. Back and Neck Pain[10]

Defendants contend that Burgess' continued complaints of neck and back pain relating to the broken screws in his spine did not constitute a serious medical need.  Defendants rely on the fact that "subjective complaints of pain are not sufficient to satisfy [the objective prong of the Eighth Amendment] standard."  Thomas, 288 F. Supp. 2d at 338.  However, medical records indisputably indicate that Burgess had multiple screws break which had been surgically implanted into his neck.  This condition arguably caused sufficient pain to require immediate treatment as was recognized by the IGRC when they granted Burgess' grievance.  Docket No. 24 at 108-110.  Accordingly, Burgess has alleged facts which, if

---

[10] To the extent that Burgess claims that defendants failed to provide him with a particular medication, such disputes over pain medication are insufficient to state a constitutional claim.  Those decisions are uniquely within the purview of physicians and other health care professionals.  Thus, such claims should be dismissed.  Sonds, 151 F. Supp. 2d at 312 ("[D]isagreements over medications . . .  are not adequate grounds for a section 1983 claim.").

credited, are sufficient to establish a serious medical need.

Additionally, construing the facts and medical record in the light most favorable to Burgess, defendants were deliberately indifferent to this need.  The medical record indicates that Burgess began complaining about unbearable pain in March 2007 and remained in pain and without treatment by a medical professional, receiving only a prescription for pain medication on one occasion, for two and one-half months.  Docket No. 24 at 79, 91.  Additionally, reading the facts in the light most favorable to Burgess, once he was scheduled for an appointment, he was subjected to a seven-hour bus ride without pain medication to a facility where his appointment was cancelled without reason and subjected to another seven-hour bus ride home.  Id. at 91.  Such allegations, if credited, establish more than mere negligence and rise to the level of recklessness or deliberate indifference.[11] Unbearable pain with an identifiable and treatable cause left unattended for a significant period of time thus suffices to state a claim for the second prong of Burgess' deliberate indifference claim here.

Furthermore, despite Burgess' diagnosis of broken surgical screws in his neck, defendants' only course of conduct for over a year was continually to recommend that Burgess attempt to contact the surgeon who had inserted the screws.  This supports Burgess' allegations of behavior which may constitute deliberate indifference.  See Docket No. 24 at 108 (concluding that grievance should be granted because Burgess had made multiple requests for treatment and written multiple letters to the medical department

---

[11] Recklessness, connotes a "kind of conduct where the defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." Poe v. Leonard, 282 F.3d 123, 140 n.14 (2d Cir. 2002) (internal quotation marks and citation omitted).

regarding his condition all of which were ignored).

Accordingly, defendants' motion on this ground should be denied.


### 3. Diabetes

Defendants do not appear to contest that Burgess' long standing diabetes was a serious medical need but, only that they were not deliberately indifferent to treating it.  Viewing the facts in the light most favorable to Burgess, no facts are alleged to present a claim for deliberate indifference.  The majority of Burgess' amended complaint centers on treatment for his finger and neck.  However, he contends that defendants' failure to treat the loss of feeling in his feet constituted deliberate indifference.  These contentions fail to allege how defendants were deliberately indifferent or delayed treatment for his feet.  Additionally, these conclusory allegations are contradicted by the record.

The medical record's earliest entries memorialize defendants' attention to, and treatment of, Burgess' diabetes, especially as it affected his feet.  Docket No. 24 at 33-36.  Additionally, Burgess' diabetes was cited as a complicating co-morbidity during his review for complaints for leg and foot pain, for which he was immediately prescribed nerve medication.  Id. at 91.  The loss of feeling occurred in spite of the treatment and medication provided to him.  A bad result, while unfortunate, is insufficient by itself to state a claim for deliberate indifference.  The record indicates without question that Burgess received at least adequate care.  See Dean, 804 F.2d at 215 (citations omitted).

Accordingly, defendants' motion on this ground should be granted.

**D. Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Thus, all but one of Burgess' claims need not be discussed because no constitutional violation has been alleged in those instances.

With respect to Burgess' claim regarding his neck pain, further inquiry must be pursued.  First, Burgess has alleged a constitutional violation.  Second, there then existed an undeniable right to adequate medical care under the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 33 (1993) (holding that the Eighth Amendment "requires that

20

inmates be furnished with . . . reasonable safety [and i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions.") (internal quotation marks and citations omitted).  Thus, Burgess' allegations that defendants' actions as to his neck pain violated his right medical care under the Eighth Amendment suffice to defeat defendants' claim of qualified immunity at this stage in the litigation.

Accordingly, it is recommended that defendants' motion on this ground be granted as to all claims except Burgess' Eighth Amendment medical claim regarding his neck pain and denied as to that claim.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Docket No.24) be:

1. **GRANTED** as to defendants Wright and Sears in all respects and that those two defendants be **DISMISSED** from the action;

2.  **DENIED** as to Burgess' Eighth Amendment claim regarding medical treatment for his neck ; and

3.  **GRANTED** in all other respects as to all remaining claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  August 19, 2009
             Albany, New York

_____
United States Magistrate Judge